[Cite as *In re T.A.*, 2011-Ohio-6273.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.   96499

## IN RE: T.A.
## A Minor Child

## JUDGMENT:
## AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. DL 10113144

**BEFORE:**   E. Gallagher, J., Stewart, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:**    December 8, 2011
**ATTORNEY FOR APPELLANT**

Ohio Public Defender
BY:   Brooke M. Burns
Assistant Public Defender
250 East Broad Street
Suite 1400
Columbus, Ohio   43215

**ATTORNEYS FOR APPELLEE**, **C.S.E.A.**

William D. Mason
Cuyahoga County Prosecutor
BY:   Justin S. Gould
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶ 1}   T.A., a minor child, appeals his adjudication of delinquency in the Cuyahoga County Court of Common Pleas, Juvenile Division.[1]   T.A. argues that the trial court erred by admitting impermissible evidence and that his adjudication of delinquency was against the manifest weight of the evidence.   Finding no merit to this appeal, we affirm the decision of the trial

---

[1]The parties are referred to herein by their initials or title in accordance with this court's established policy regarding non-disclosure of identities in juvenile cases.

court.

**{¶ 2}** On July 21, 2010, the state of Ohio filed a complaint against T.A. charging him with two counts of felonious assault with one and three-year firearm specifications stemming from events that occurred on May 16, 2010. On January 18, 2011, T.A. appeared before the Juvenile Court with his parents for an adjudicatory hearing where he was represented by counsel.

**{¶ 3}** During the hearing, M.B., a minor child and one of the victims in this case, testified that on May 16, 2010, he and T.A. got into a physical altercation. On that date, M.B. along with his three friends, "Butter," "Mainline," and "Dion," were on East 83rd Street and Superior Avenue when they observed T.A. M.B. and his friends approached T.A. in order that M.B. could confront him. M.B. testified that he and T.A. had a history of fighting and they engaged in a physical altercation with each other on that date. M.B. admitted that he and his three friends fought T.A. and that the fight ended when a neighbor threatened to call the police.

**{¶ 4}** M.B. testified that approximately forty-five minutes later, he was at his home on East 86th Street with his mother, A.P. A.P., the second victim in this case, testified that she was standing in the doorway, looking out into the street when she saw T.A. along with three other boys walking towards her house. A.P. told her son that T.A. was outside and that he

should go out to learn what T.A. wanted. A.P. testified that as her son was putting on his shoes, she observed T.A. reach his hand behind his back and then raise a gun towards the house. A.P. told her son to stay inside the house, that T.A. had a gun.

{¶ 5} A.P. made an in-court identification of T.A. as the individual pointing a gun towards her house and testified that one of the unidentified youths also had a weapon. A.P. testified that as she stood in her doorway, T.A. and the other male began shooting at her house. A.P. and her son ran upstairs as bullets entered their home and then called 911. Because M.B. never went outside, he never observed T.A. with a gun, nor did he see T.A. shoot at his home.

{¶ 6} Although A.P. testified that she identified T.A. as the shooter when the officers responded to her 911 call on May 16, 2010, her testimony was inconsistent as to when she actually identified T.A. A.P. testified that she knew that her son and T.A. had a history of fighting, even admitting that five years earlier she observed a video of her son and T.A. fighting on school property. A.P. stated that she could identify T.A. as the shooter because she knew him from the neighborhood, and more specifically, from hanging out at the corner store on East 79th and Superior. Additionally, A.P. reported that T.A. had come to her mother's home, which was next to her residence, one

year prior to the shooting looking for her son. A.P. admitted on cross-examination that she knew T.A. from photographs he posted on his Myspace page.

{¶ 7} On re-direct, the state questioned A.P. about her knowledge of T.A.'s Myspace page. She testified, over objection, that after the shooting, Alicia Walker, a woman whom she knows, came to her house with a printout from T.A.'s Myspace page that contained an admission from T.A. to the shooting at her home in addition to threats that he would do it again. The court also allowed A.P. to testify concerning a voice recording that allegedly captured T.A. admitting to the shooting at her home. Neither the printout from Myspace or the recording were produced at trial.

{¶ 8} The state next presented Detective Darryl Johnson, who testified that he photographed the crime scene, and Mr. Lonnie Tolbert, a neighbor of A.P., who testified that he heard gunshots at approximately 7:00 p.m. on the night of May 16, 2010. Neither Detective Johnson nor Mr. Tolbert were able to identify T.A. as the shooter.

{¶ 9} In the defense case-in-chief, T.A. testified that on the night of May 16, 2010, M.B., Butter, and Dion "jumped him," knocking out one of his teeth. T.A. further stated that one of the nearby residents called the police, who arrived on the scene and detained him at approximately 7:00 p.m. on

East 83rd and Superior. T.A. stated that he was being questioned by two officers when they received a call that shots had been fired on East 86th Street. T.A. had reported to police that M.B., Dion, Butter, and Mainline were the individuals who jumped him and he presented himself to the hospital on May 17, 2010 for treatment for his tooth. Lastly, T.A. testified that police officers did not question him about the shooting until July 18, 2010, more than two months after the alleged incident occurred.

{¶ 10} Following the presentation of evidence as outlined above, the court noted that it would not be giving the evidence concerning T.A.'s Myspace page any weight because the original printout had not been produced. Nonetheless, the court adjudicated T.A. delinquent of two counts of felonious assault with three-year firearm specifications. On August 23, 2011, the court dismissed both one-year firearm specifications and sentenced T.A. as follows: for both charges of felonious assault, the court committed T.A. to the Ohio Department of Youth Services for an indefinite term of 12 months to a period not to exceed T.A.'s 21st birthday with the counts to run concurrently; and one year on each of the three-year firearm specifications to be served consecutively to the underlying sentence.

{¶ 11} T.A. appeals, raising the two assignments of error contained in the appendix to this opinion.

{¶ 12} In his first assignment of error, T.A. argues the trial court erred when it allowed A.P. to testify as to the contents of T.A.'s Myspace page because it violated the requirements of the best evidence rule. Although we agree with the crux of T.A.'s claim, we overrule his assigned error.

{¶ 13} "[T]he admission or exclusion of evidence is generally within the sound discretion of the trial court and a reviewing court may reverse only upon the showing of an abuse of that discretion." *Anderson v. Anderson*, 147 Ohio App.3d 513, 529, 2002-Ohio-1156, 771 N.E.2d 303; *State v. Coulter* (1992), 75 Ohio App.3d 219, 227, 598 N.E.2d 1324. The admissibility of evidence is predicated on whether or not the evidence is relevant. Evid.R. 402. Evidence is relevant where it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Therefore, the test for relevancy is a broad examination of the evidence. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864. However, even relevant evidence may not be admitted where "its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403. See, also *State v. Sims*, Butler App. No. CA2007-11-300, 2009-Ohio-550.

{¶ 14} In the present case, defense counsel attempted to impugn A.P.'s

identification of T.A. as the shooter. More specifically, as the only witness able to identify T.A. as the shooter, defense counsel sought to explore A.P.'s familiarity with T.A. Defense counsel learned that although A.P. did observe T.A. on prior occasions, the most recent interaction with T.A. was over a year prior to the shooting. The other ways A.P. identified T.A. was through a video of T.A. and her son fighting that she observed five years prior to the shooting, and by having seen T.A. around the neighborhood at unidentified periods. Lastly, A.P. admitted on cross-examination that one of the ways she was able to identify T.A. as the shooter was through photographs she observed on his Myspace page. On re-direct and over objection by T.A.'s trial counsel, A.P. outlined how, after the shooting, she saw a printout from T.A.'s Myspace page wherein he admitted to shooting her home and threatened further violence against the home.

{¶ 15} Further, admission of the contents of a document requires that the original writing be available. Evid.R. 1002. While the state argues that Evid.R. 1004(3) applies as an exception to the best evidence rule, we disagree. Evid.R. 1004(3) states that the original is not required and that other evidence of the writing may be admissible if "[a]t a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be

subject of proof at the hearing, and that party does not produce the original at the hearing." While T.A. is certainly in control of the contents of his own Myspace page, the defense was never put on notice that the contents of T.A.'s alleged Myspace page would be the subject of proof at trial. More importantly, defense counsel repeatedly objected to the state's questions regarding the Myspace contents stating that he had not been provided with an opportunity to see or review the information and said the Myspace page was never authenticated.

{¶ 16} Nonetheless, prior to adjudging T.A. delinquent, the trial court stated that it would not be giving any of the evidence concerning T.A.'s alleged Myspace page any weight because the original printout had not been produced. As such, we are forced to conclude that the trial court's erroneous admission of the contested testimony during trial was harmless error. The trial court clearly stated that it did not give the evidence any weight. As such, we cannot state that the trial court abused its discretion.

{¶ 17} T.A.'s first assignment of error is overruled.

{¶ 18} In his second assignment of error, T.A. argues that his convictions are against the manifest weight of the evidence. We disagree.

{¶ 19} In evaluating a challenge based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into

proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.'
>
> * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

(Citations omitted.) Id. at 387.

{¶ 20} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, at paragraphs one and two of the syllabus. The goal of the

reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995. (Internal citation omitted.)

{¶ 21} We decline to find such an exceptional case here. In support of its case, the state presented the testimony of A.P. who testified in great detail about the shooting. More specifically, A.P. repeatedly identified T.A. as the individual who appeared in front of her home on the night of May 16, 2010. She told her son T.A. was standing outside of her house with a gun and shortly thereafter, she testified that she observed T.A. shoot into her home. Although A.P.'s identification testimony of T.A. as the shooter was muddied by the court's erroneous admission of the Myspace testimony, A.P. clearly identified T.A. as the shooter in court. Further, A.P. testified that she told police officers on May 16, 2010 that T.A. was the shooter.

{¶ 22} Though T.A. argues that his version of events should have been relied upon by the trial court, the trier of fact is in the best position to weigh the evidence and the credibility of witnesses. As the reviewing court, we find that the trier of fact could reasonably conclude from the substantial evidence presented by the state, that the state has proven the offenses

beyond a reasonable doubt. Accordingly, we cannot state that the trier of fact lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

**{¶ 23}** T.A.'s second assignment of error is overruled.

**{¶ 24}** The judgment of the trial court is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said lower court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

EILEEN A. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
LARRY A. JONES, J., CONCUR

**Appendix**

**Assignments of Error:**

> "I. The juvenile court erred when, over defense counsel's objection, it permitted the State to introduce into evidence, testimony about the contents of what was alleged to be T.A.'s Myspace account, without requiring the State to produce an original printout or recording of the Myspace page contents. Evid.R. 1002. This was done in violation of T.A.'s right to due process."

> "II. The juvenile court violated T.A.'s right to due process under the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Section 16 of the Ohio Constitution when it adjudicated him delinquent of felonious assault with a firearm specification, when that decision was against the manifest weight of the evidence."