[Cite as *Bartells v. Bertel*, 2018-Ohio-21.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| ANTHONY BARTELLS, | : | |
| | | CASE NO. CA2016-11-216 |
| Petitioner-Appellee, | : | |
| | | O P I N I O N |
| | : | 1/2/2018 |
| - vs - | | |
| | : | |
| CRAIG BERTEL, | : | |
| Respondent-Appellant. | : | |

CIVIL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CP2016-05-0239

Muhammad Hamidullah, 616 Dayton Street, P.O. Box 1166, Hamilton, Ohio 45011, for petitioner-appellee

Croskery Law Offices, Alexander J. Durst, 810 Sycamore Street, 2nd Floor, Cincinnati, Ohio 45202, for respondent-appellant

**M. POWELL, J.**

{¶ 1} Respondent-appellant, Craig Bertel ("Respondent"), appeals a decision of the Butler County Court of Common Pleas granting a civil stalking protection order ("CSPO") against him and in favor of petitioner-appellee, Anthony Bartells ("Petitioner").

{¶ 2} Following the finalization of their divorce in 2014, Respondent and Patricia Bertel ("Patricia") continued to litigate issues relating to the custody and parenting time of

their three children. Petitioner and Patricia are romantically involved and live together in Patricia's home.

{¶ 3} Following a number of runs-ins with Respondent, Petitioner filed a petition for a CSPO on May 24, 2016. The petition alleged that Respondent had followed Petitioner a few times and once parked near Patricia's home in a visitor parking spot so that Respondent "could see into the bedroom window and watch" Petitioner. As a result, the petition alleged, Petitioner was under a lot of stress and fear and "had to change where I park when I leave for work and come home [and] watch over my shoulder all the time." That same day, a magistrate held an ex parte hearing, issued a temporary ex parte CSPO ("temporary CSPO"), and scheduled a full evidentiary hearing ("CPO hearing") on the matter. The CPO hearing was held on July 26, 2016. Petitioner described the incidents that prompted him to request the CSPO. Respondent and Patricia testified as well.

{¶ 4} Petitioner first testified that when the parties attended a function at Adena Elementary School in early 2016, Respondent told Petitioner to get out of his business or he would kick his "butt," then "got in [Petitioner's] face" and pushed him. Patricia testified that the incident occurred in early 2016 and that as the two men were arguing, Respondent stated he was going to kick Petitioner's "butt." Patricia could not remember whether Respondent pushed Petitioner.

{¶ 5} Another incident occurred in February or March 2016 at Hopewell Elementary School where the parties were attending a Cub Scouts meeting. During the meeting, Respondent used his cellphone and videotaped or took pictures of Petitioner. Patricia testified Respondent's cellphone was pointed in her and Petitioner's direction. A photograph taken by Petitioner shows Respondent holding his cellphone in his hands and listening to a speaker. Respondent's body is turned toward the speaker whereas his cellphone is pointed away from the speaker and in the direction of Petitioner and Patricia.

{¶ 6} The next incident occurred on March 16, 2016, when Respondent picked up the children at Patricia's home. As Petitioner was walking behind Respondent's car to head back into the residence, Respondent backed up and struck Petitioner, knocking him to the ground and injuring his right shoulder. Petitioner stated his belief Respondent intentionally struck him with his car. Patricia stated she did not know whether Respondent struck Petitioner on purpose.

{¶ 7} Another incident occurred shortly after when Petitioner was at work. As Petitioner was taking out the trash, he observed a dark grey, two-door Honda Civic parked several feet away from the building. The driver looked to be a man. As Petitioner tried to get a better look at the driver, the car turned around and quickly drove away.

{¶ 8} The next incident occurred on the morning of May 24, 2016, the day Petitioner filed his CSPO petition. Respondent was to pick up the children at Patricia's home at 9:00 a.m. Petitioner observed Respondent sitting in his car around 8:35 a.m. Respondent was unusually parked away from the house, in a visitor parking spot that allowed him to have a clear view of the home and see into the bedroom window. At the time of the incident, Petitioner was in the bedroom, getting ready for work.

{¶ 9} Petitioner further testified about two incidents that occurred after the temporary CSPO was issued on May 24, 2016. The first incident involved an email Respondent sent to Patricia, asking that she and Petitioner drop the temporary CSPO. Patricia testified that in reply to her wish to have family counseling, Respondent told her he would not agree to counseling unless the temporary CSPO was dropped. The second incident involved Respondent being parked at the pool house of Patricia's apartment complex. Each of these incidents would violate the terms of the temporary CSPO.

{¶ 10} Petitioner and Patricia further testified about two other incidents, to wit, a cut brake line on Patricia's car which Petitioner had been driving for one to two weeks, and

Respondent parking behind Patricia's and Petitioner's vehicles for five to ten minutes in a parking garage on the day of a hearing before the magistrate. With regard to the cut brake line, Petitioner stated his belief Respondent did it. By contrast, Patricia could not say that Respondent cut the brake line. Finally, Petitioner testified that Respondent followed him in his car in June 2016.

{¶ 11} Respondent denied threatening to kick Petitioner's "butt" and pushing him at Adena School, or taking pictures of Petitioner at Hopewell School. Respondent denied any involvement regarding the cut brake line on Patricia's car. He further denied driving or owning a Honda Civic, and denied knowing anyone who has a grey Honda Civic. Respondent admitted he once followed Petitioner and Patricia as he was driving to work. He explained that after Patricia picked up the children, they were all traveling on the same road until they eventually went their separate ways.

{¶ 12} Respondent admitted parking behind Petitioner's and Patricia's vehicles in the parking garage on the day of a hearing, but stated he did not see their vehicles until he exited his car, at which point he got back into his car and parked somewhere else. Respondent further admitted he parked at the pool house of Patricia's apartment complex but stated he was simply picking up a friend of one of the children and believed he was parked in compliance with the temporary CSPO.

{¶ 13} Respondent explained that he intentionally parked away from Patricia's home on the morning of May 24, 2016, so that he could simply pull away from the parking spot and not back up. Respondent denied he was there 30 minutes earlier than his pick-up time; rather, he was there 9 minutes early. Respondent denied seeing Petitioner that day or knowing he was home.

{¶ 14} Respondent admitted he sent the email to Patricia about the temporary CSPO but claimed he was only suggesting it would be nice if the CSPO was dropped. In response

to the magistrate's questioning, Respondent conceded that in his exchange of emails with Patricia about counseling, he was the first one to mention the temporary CSPO.

{¶ 15} Respondent admitted audio-recording the incident where he struck Petitioner with his car. Respondent admitted he saw Petitioner behind his car, asked him to either move or stay still, and when Petitioner did not move, started backing up slowly and ultimately struck him. Respondent denied he intentionally struck Petitioner. Rather, he "thought he had moved back a little bit, or was just going to stand there and let me pull out."

{¶ 16} At the conclusion of the hearing, the magistrate ruled that a CSPO protecting Petitioner from Respondent was in order, finding that the preponderance of the evidence showed that Respondent "engaged in a pattern of conduct whereby he knowingly caused [Petitioner] to feel fear of physical harm [and] actually did physically harm him." The next day, the magistrate issued a three-year CSPO, finding that

> Petitioner established that Respondent engaged in conduct that caused him to believe he would cause harm to him. Taking in the totality of the circumstances[,] the court finds that Respondent exhibited behavior that was in disregard of Petitioner's health and safety. The Court finds that Respondent purposely struck Petitioner with his vehicle, followed Petitioner, photographed him w/o permission and engaged in behavior so as to surreptitiously observe Petitioner. The adverse behavior continued even after the issuance of a temporary order.

Respondent filed objections to the magistrate's decision. On October 13, 2016, the trial court overruled the objections and adopted the magistrate's decision.

{¶ 17} Respondent now appeals, raising four assignments of error. The third and fourth assignments of error will be addressed in reverse order.

{¶ 18} Assignment of Error No. 1:

{¶ 19} THE COURT ERRED IN EXCLUDING EVIDENCE OF WITNESS PATRICIA BERTEL'S BIAS AND CHARACTER FOR UNTRUTHFULNESS.

{¶ 20} Respondent challenges the trial court's refusal to admit one of Patricia's

Facebook posts, arguing the post was admissible under Evid.R. 608(B) and 616(A) because it showed Patricia's bias, prejudice, and motive against Respondent. Respondent further argues the trial court erred in not allowing him to cross-examine Patricia to show she had lied about the Facebook post in her deposition, where she denied posting about a ruling by the domestic relations court.[1]

{¶ 21} Decisions regarding the admission of evidence are within the sound discretion of the trial court and may not be reversed absent an abuse of discretion. *Proctor v. NJR Properties, L.L.C.*, 175 Ohio App.3d 378, 2008-Ohio-745, ¶ 14 (12th Dist.). An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 22} Evid.R. 608(B) provides in relevant part that

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the witness's character for truthfulness or untruthfulness[.]

{¶ 23} Evid.R. 616 governs methods of impeachment and provides that "[b]ias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." Evid.R. 616(A).

{¶ 24} As stated above, Respondent and Patricia engaged in post-divorce litigation regarding the custody and parenting time of their three children. The record indicates that Patricia unsuccessfully sought a civil protection order ("CPO") against Respondent in the domestic relations court and that a friend of Patricia and the daughter of the friend both unsuccessfully sought a CPO against Respondent. The record further indicates that

---

1. Patricia's deposition was taken on June 21, 2016, and filed with the trial court in August 2016, approximately

following a ruling by the domestic relations court, Patricia posted the following comment on Facebook: "Pray for my children and that they will be kept safe, since the legal system will not allow them to be safe. If anyone has suggestions on how to get the court to protect us, private message."

{¶ 25} During the CPO hearing, Respondent sought to introduce this particular Facebook post as well as other Facebook posts to challenge Patricia's credibility and show she was using Petitioner's CSPO filing as a means to keep Respondent away from the children and as a motive to lie in support of Petitioner. Patricia identified the post above and admitted it was hers. She further admitted stating in her deposition that she was unhappy with the fact her children were not being kept safe and healthy. The trial court allowed the testimony about the Facebook post but did not admit the post itself or the other posts, and did not allow Respondent to ask Patricia whether she had initially lied in her deposition regarding the Facebook post:

> THE COURT: I mean she said she's not happy. I'm not going to let this be a fishing expedition for any DR [Domestic Relations]. * * *
>
> * * *
>
> MR. DURST: [Respondent's attorney]: No, but, your Honor, I believe I can ask [Patricia] if it was her statement or not, and it could be allowed for impeachment.
>
> THE COURT: You can ask her that. You asked her that answer. She answered it. These aren't going to be admitted.
>
> MR. DURST: Okay. Okay. All I care about is getting out what she posted.
>
> THE COURT: I'm not sure where we're going. We're going far astray here into something that I'm not sure this is what this protection is about. Once again, this is about your client's actions with regard to [Petitioner]. Not her actions. You simply asked a question was she not happy with the results. She said

---

three weeks after the CPO hearing.

she wasn't. Once you found out, you tried to impeach her. She now – you're now showing that she's not. Let's go on.

MR. DURST: All right.

{¶ 26} We find no abuse of discretion. Respondent sought to introduce and admit the Facebook post to show that Patricia was unhappy with the domestic relations court's failure to favorably rule in her parenting time dispute with Respondent and that she was searching for other ways to protect her children from Respondent. While the post itself was not admitted into evidence, the testimony about the post was not stricken and remained of record. Further, Patricia admitted she was not happy with the domestic relations court's ruling. Hence, while the trial court limited Respondent's questioning, it nevertheless allowed him to challenge Patricia's credibility and show she was inconsistent between her deposition and her testimony at the CPO hearing.

{¶ 27} We further find the trial court did not abuse its discretion in not allowing Respondent to cross-examine Patricia as to whether she had lied about the Facebook post in her deposition.[2] Patricia's Facebook post made no specific reference to any domestic relations court's ruling. Therefore, Patricia may not have considered her Facebook post to constitute "posting stuff about the decision," that is, to be about the domestic relations court's ruling.

{¶ 28} We further note that Evid.R. 611(A) confers upon a trial court the discretion to manage the presentation of evidence in order to "make the interrogation and presentation effective for the ascertainment of the truth [and to] avoid needless consumption of time." This is the type of issue that can consume an inordinate amount of time on a peripheral issue. The trial court refused to allow Respondent to go on a "fishing expedition" and we find

---

2. After Patricia admitted the Facebook post was hers, counsel for Respondent asked her, "And in your deposition, * * * when I asked you if you ever posted on Facebook about the decision, you initially lied and said I did not post stuff about the decision, correct?" Patricia started to reply, "I didn't lie. I didn't state –," before counsel for Petitioner objected. The magistrate sustained the objection, stating: "I mean she said she's not

no error.

{¶ 29} In light of the foregoing, Respondent's first assignment of error is overruled.

{¶ 30} Assignment of Error No. 2:

{¶ 31} THE TRIAL COURT ERRED IN ADMITTING TESTIMONY TO PROVE THE CONTENTS OF AN EMAIL, IN CONTRAVENTION OF THE "BEST EVIDENCE RULE," EVID.R. 1002.

{¶ 32} Respondent argues the trial court erred in allowing Petitioner to testify about the contents of the email Respondent sent to Patricia which suggested that the temporary CSPO be dropped. The email itself was not introduced into evidence. Respondent argues Petitioner should have been required to provide the email itself pursuant to the best evidence rule as codified in Evid.R. 1002.

{¶ 33} Evid.R. 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio." The best evidence rule rests on the fact that an original writing is more reliable, complete, and accurate as to its contents and meaning. *Discover Bank v. Brockmeier*, 12th Dist. Warren No. CA2006-07-078, 2007-Ohio-1552, ¶ 17.

{¶ 34} However, Evid.R. 1004 provides several exceptions to the rule. Pursuant to Evid.R. 1004(3), the original writing is not required, and other evidence of the contents of the writing is admissible, if "[a]t a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleadings or otherwise, that the contents would be subject of proof at the hearing, and that party does not produce the original at the hearing." *In re T.A.*, 8th Dist. Cuyahoga No. 96499, 2011-Ohio-6273, ¶ 15. Thus, the best evidence rule "does not exclude all but the primary evidence of a fact; it requires only that the

happy. I'm not going to let this be a fishing expedition for any DR."

best evidence available be produced, whether it be primary or secondary." *State v. Sims*, 12th Dist. Butler No. CA2007-11-300, 2009-Ohio-550, ¶ 26.

{¶ 35} Both Petitioner and Respondent testified about the contents of the email but neither party introduced it into evidence. On cross-examination, Respondent admitted sending the email and conceded he was the one who first mentioned the temporary CSPO in his email exchange with Patricia. Respondent further indicated he had a copy of the email on his cellphone. At the time of the CPO hearing, Respondent was facing two criminal charges for violating the temporary CSPO. Testimony at the hearing shows that the email was the basis for one of the criminal charges against Respondent. Thus, Respondent was "otherwise" on notice that the email would be at issue during the hearing. Respondent, however, did not produce the original email at the hearing.

{¶ 36} Because Respondent had a copy of, and control over the original email, was on notice that the email would be at issue during the CPO hearing, or alternatively, never argued he was not put on notice, and did not produce the email at the CPO hearing, Petitioner satisfied all the requirements of Evid.R. 1004(3) and was thus relieved from the burden of presenting the email at the hearing. *See Publishing Group, Ltd. v. Cooper*, 10th Dist. Franklin No. 10AP-791, 2011-Ohio-2872. The trial court, therefore, did not err in permitting Petitioner to prove the existence and contents of the email through oral testimony.

{¶ 37} Respondent's second assignment of error is overruled.

{¶ 38} Assignment of Error No. 4:

{¶ 39} THE TRIAL COURT ERRED IN SOLICITING PARTISAN TESTIMONY SUPPORTIVE OF THE PETITIONER'S CASE, IN CONTRAVENTION OF EVID.R. 614(B).

{¶ 40} Respondent argues the trial court interrogated Petitioner in a partial manner and improperly assisted Petitioner with his case during the CPO hearing in violation of Evid.R. 614(B).

**{¶ 41}** Respondent takes issue with three instances where the trial court questioned Petitioner. First, Respondent argues the trial court was partial when it helped Petitioner "come up with an elegant explanation of his numerous inconsistencies." During cross-examination, counsel for Respondent challenged Petitioner's version of the Adena School incident by confronting him with his prior testimony in a deposition and at a March 23, 2016 domestic relations hearing.[3] Petitioner acknowledged the inconsistencies but explained he "didn't remember at the time until after I kept on thinking about it." Following an objection from Petitioner's counsel, the trial court stated, "I think he's answered the question. He didn't remember at the time of the deposition." The court then asked Petitioner, "is it safe to say that you're claiming here today that the reason your testimony differs from now is you did not recall more than one incident at the time. And then upon reflection you've been able to recall more?" Petitioner replied "Yeah."

**{¶ 42}** The next instance occurred during Petitioner's testimony regarding the cut brake line. Respondent argues the trial court improperly helped Petitioner "devise a basis to admit the picture of the alleged cut brake line." During the hearing, Petitioner claimed someone had cut the brake line on Patricia's vehicle and offered a photograph purportedly showing the severed brake line. Petitioner explained he took the photograph and admitted he did not know who or what caused the cut brake line. While looking at the photograph, the trial court first stated, "there's what appears to be a split in the black casing. You're saying that that's where it was cut?" The court then asked, "In other words, you look at that, you would have thought it would be one lone line [sic], you would not have thought you saw that there?" Petitioner replied "yeah" to both questions.

**{¶ 43}** Finally, Respondent argues the trial court improperly helped Petitioner "concoct

---

3. Petitioner's deposition was taken on July 15, 2016, 11 days before the CPO hearing, and filed in August 2016. On March 23, 2016, Petitioner testified during a hearing before the domestic relations court. The hearing

a summary of the email that would be as adverse to [Respondent] as possible." As stated above, Respondent sent the email to Patricia, asking that she and Petitioner drop the temporary CSPO. During the CPO hearing, as Petitioner was trying to explain that the email was referring to family counseling and asking Petitioner and Patricia to drop the temporary CSPO, the trial court asked, "So in other words, if you want to do counseling, you've got to drop the protection orders?" Petitioner replied, "Exactly." Subsequently, during Respondent's cross-examination, the trial court interrogated Respondent about the email and asked him whether he was "the first one to have mentioned" the temporary CSPO. Following Respondent's reply "I believe so," the court asked Petitioner's counsel, "Do you need him to go any further?" After counsel for Petitioner replied "No. I don't," the trial court stated, "Okay. Let's move on."

{¶ 44} We begin by noting that Respondent did not object to the trial court's foregoing conduct during the CPO hearing. He has therefore waived all but plain error. *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, ¶ 22 (12th Dist.). In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself. *Id.*; *Goldfuss v. Davidson*, 79 Ohio St.3d 116 (1997), paragraph one of the syllabus.

{¶ 45} Pursuant to Evid.R. 611(A), a trial court has discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment."

---

addressed parenting time issues between Respondent and Patricia.

{¶ 46} Evid.R. 614(B), in turn, allows a trial court to "interrogate witnesses in an impartial manner, whether called by itself or by a party." Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court acted impartially in questioning a witness as to a material fact or to develop the truth. *Denier v. Carnes-Denier*, 12th Dist. Warren No. CA2015-11-106, 2016-Ohio-4998, ¶ 30. A trial court's interrogation of a witness is not deemed partial merely because it elicits evidence that is damaging to one of the parties. *Henry*, 2011-Ohio-2098 at ¶ 24.

{¶ 47} A "trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom. He has active duties to perform in maintaining justice and in seeing that the truth is developed[.]" *Jenkins v. Clark*, 7 Ohio App.3d 93, 97 (2d Dist.1982). A trial court has an obligation to clarify ambiguities and bears the ultimate duty of insuring that the truth emerges from the proceedings before it. *Henry* at ¶ 24, 26. Furthermore, in a bench trial, the trial court is accorded greater flexibility in questioning witnesses and conducting the hearing because when there is no jury, there is no one to be prejudicially influenced by the judge's demeanor. *Id.* at ¶ 25; *Lyons v. Schandel*, 7th Dist. Carroll No. 14 CA 898, 2015-Ohio-3960, ¶ 23.

{¶ 48} We find that none of the three instances of questioning constitute error, let alone plain error. Petitioner's testimony was at times rambling and, as Respondent points out, somewhat incoherent. In fulfilling its duty to see that the truth was developed, the trial court simply asked certain questions to better understand Petitioner's testimony, and did not demonstrate bias or prejudice in the manner it conducted the CPO hearing. Rather, the trial court demonstrated its desire to develop all the pertinent facts necessary for its determination. In this regard, it is important to distinguish between the trial court's functions of understanding the testimony and weighing its veracity. There is no showing that the trial court was acting partially or was doing anything more than ascertaining the facts in the case.

- 13 -

In other words, the trial court's questions, clarifications, and overall conduct were directed toward advancing the goals set forth in Evid.R. 611, that is, to help the court, sitting as the trier of fact, in ascertaining the truth, and to speed the process along and avoid needless consumption of time. *See Henry*, 2011-Ohio-2098; *Elias v. Macek*, 8th Dist. Cuyahoga No. 78828, 2001 Ohio App. LEXIS 4776 (Oct. 25, 2001) (trial court's questions were a reasonable attempt to maintain order in the courtroom, monitor the presentation of evidence, and impartially clarify what it believed was incomplete or confusing testimony).

{¶ 49} Respondent's fourth assignment of error is overruled.

{¶ 50} Assignment of Error No. 3:

{¶ 51} THE TRIAL COURT ERRED IN GRANTING PETITIONER-APPELLEE A CIVIL STALKING PROTECTION ORDER WHEN THERE WAS NOT SUFFICIENT CREDIBLE EVIDENCE TO PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT THE RESPONDENT ENGAGED IN MENACING BY STALKING.

{¶ 52} Respondent argues the trial court erred in issuing a CSPO against him and in favor of Petitioner.

{¶ 53} Generally, when assessing whether a civil stalking protection order should have been issued, an appellate court reviews the record to determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief. *Fouch v. Pennington*, 12th Dist. Clermont No. CA2011-10-075, 2012-Ohio-3536, ¶ 9. However, when a magistrate issues a protection order, and the trial court adopts the magistrate's decision, we review the trial court's adoption of the decision for an abuse of discretion. *Fortney v. Willhoite*, 11th Dist. Lake No. 2011-L-120, 2012-Ohio-3024, ¶ 33.

{¶ 54} Issuance of a protection order pursuant to R.C. 2903.214 requires the petitioner to establish that the respondent engaged in conduct constituting menacing by stalking. R.C. 2903.214(C)(1). Menacing by stalking is defined as "engaging in a pattern of conduct [that]

- 14 -

knowingly cause[s] another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person[.]" R.C. 2903.211(A)(1). A preponderance of the evidence standard applies to the granting of a stalking civil protection order. *Lane v. Brewster*, 12th Dist. Clermont No. CA2011-08-060, 2012-Ohio-1290, ¶ 18.

{¶ 55} "A person acts knowingly, regardless of purpose, when the person is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Furthermore, "[a] person has knowledge of circumstances when he is aware that such circumstances probably exist." *Id.*

{¶ 56} A pattern of conduct requires only two or more actions closely related in time. R.C. 2903.211(D)(1). In determining what constitutes a pattern of conduct, a trial court must take every action of the respondent into consideration even if some of the actions, considered in isolation, do not seem particularly threatening. *Fouch*, 2012-Ohio-3536 at ¶ 11. Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211. *Lundin v. Niepsuj*, 9th Dist. Summit No. 26015, 2014-Ohio-1212, ¶ 19.

{¶ 57} Respondent argues the evidence does not support the trial court's findings that Respondent intentionally hit Petitioner with his car, followed him, or surreptitiously observed him, or that Patricia's testimony corroborated Petitioner's testimony. Respondent further argues that Petitioner failed to prove Respondent engaged in a pattern of conduct. Finally, Respondent argues the trial court improperly ignored Petitioner's incredibility, the numerous inconsistencies in his testimony, and Patricia's bias toward Respondent, and instead helped Petitioner justify his numerous inconsistencies.

{¶ 58} At the close of the CPO hearing, the trial court found "by a preponderance of the evidence that [Respondent] engaged in a pattern of conduct whereby he knowingly caused [Petitioner] to feel fear of physical harm, actually did physically harm him, and has since violated the [temporary] protection order, at least on two, if not multiple occasions." In

explaining its decision, the trial court found that Respondent had violated the temporary CSPO by emailing Patricia about dropping the temporary CSPO, by parking at the pool house of Patricia's apartment complex, and by parking behind Patricia and Petitioner in a parking garage on the day of a hearing before the magistrate.

{¶ 59} The trial court acknowledged there were some credibility issues regarding Petitioner's testimony but stated it was in the best position to understand the totality of the circumstances and observe the demeanor and behavior of the witnesses. The trial court continued,

> I truly believe that at this point, [Petitioner] is somewhat frustrated, flustered. Throughout the proceeding he has mentioned he is hard of hearing, has difficulties hearing, which puts him at a disability. I truly believe that at this point[,] he does feel threatened. That yes, he does feel harmed. I think that when he's pressured and under a lot of pressure being asked questions about all of this that's going on, he may change his stories a little bit. His girlfriend [Patricia] comes in and corroborates his story, the first time he told it, the way he told it here.

Regarding the car incident, the trial court first stated, "did he see him, did he not," but then noted Respondent's testimony that "oh, [Petitioner] just wouldn't move so I kept backing slowly. And you hit him. * * * [Y]ou never testified that [Petitioner] was hitting the car, or threatening bodily harm to you. You continued to back up and hit him with a vehicle."

{¶ 60} On July 27, 2016, the day after the hearing, the trial court issued a CSPO, finding that "Respondent purposely struck Petitioner with his vehicle, followed Petitioner, photographed him w/o permission and engaged in behavior so as to surreptitiously observe Petitioner. The adverse behavior continued even after the issuance of a temporary order."

{¶ 61} We find the trial court did not err in issuing a CSPO against Respondent and in favor of Petitioner. Respondent denied he intended to hit Petitioner with his car but admitted that when Petitioner did not move out of the way, Respondent started to back up slowly,

ultimately striking Petitioner. Respondent further admitted he once followed Petitioner and Patricia after an exchange of the children but explained he was driving to work and the parties simply used the same road for a while. Respondent acknowledged sending an email to Patricia suggesting that Petitioner drop the temporary CSPO. Respondent further acknowledged parking in an unusual spot when he picked up the children on May 24, 2016.

{¶ 62} Patricia generally corroborated Petitioner's testimony. She testified that Respondent's cellphone was oddly pointed in her and Petitioner's direction during a Cub Scout meeting at Hopewell School; Respondent sent her an email asking that Petitioner drop the temporary CSPO; and Respondent parked for several minutes behind her and Petitioner in a parking garage. While Patricia could not remember whether Respondent pushed Petitioner during the Adena School incident, she corroborated Petitioner's testimony that Respondent wanted to kick his "butt." Patricia did not know whether Respondent intentionally struck Petitioner with his car but testified that at a minimum, Respondent should have been watching what he was doing.

{¶ 63} Respondent takes issue with the trial court's purported disregard of Petitioner's incredibility, the numerous inconsistencies in his testimony, and Patricia's bias toward Respondent. However, in cases such as this, it is not unusual for the court to hear conflicting testimony from different parties. *Lane*, 2012-Ohio-1290 at ¶ 55. While we acknowledge Respondent's testimony explaining or denying his conduct, it was up to the trial court to determine the weight and credibility to afford Petitioner's version of the events, as corroborated by Patricia, versus Respondent's version. *Id.* "A trier of fact is free to believe all, part, or none of the testimony of each witness." *In re S.C.T.*, 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24. Appellate courts typically defer to trial courts on issues of weight and credibility because, as the trier of fact, the trial court is better able "to view the witnesses and to observe their demeanor, gestures, and voice inflections and then

to use those observations in weighing credibility." *Lane* at ¶ 55. Upon review of the record, we decline to substitute our judgment for that of the trial court.

{¶ 64} Finally, we find that Petitioner produced evidence that was sufficient to establish a pattern of conduct pursuant to R.C. 2903.211. Although Petitioner did not provide dates regarding a handful of incidents, the record shows that most incidents occurred in 2016 within the span of only a few months and were thus closely related in time. *See Cooper v. Manta*, 11th Dist. Lake No. 2011-L-035, 2012-Ohio-867 (incidents occurring in the same year the petition was filed were closely related in time for purposes of establishing the required pattern of conduct).

{¶ 65} When looking at a pattern of conduct, the trial court must take into consideration everything, even if some of the respondent's actions, considered in isolation, do not seem particularly threatening. *Fouch*, 2012-Ohio-3536 at ¶ 11. The evidence of Respondent striking Petitioner with his car and injuring him on March 16, 2016, when coupled with Respondent's prior threat to kick Petitioner's "butt," Respondent's subsequent email asking that Petitioner drop the temporary CSPO, and Respondent's actions in parking at the pool house of Patricia's apartment complex, parking behind Petitioner in a parking garage, and unusually parking away from Patricia's house on May 24, 2016, in a visitor parking spot that allowed a clear view of the home and the bedroom window, constitutes a pattern of conduct sufficient to support the granting of the CSPO.

{¶ 66} Respondent's third assignment is accordingly overruled.

{¶ 67} Judgment affirmed.

HENDRICKSON, P.J. and PIPER, J., concur.