[Cite as *Wilson v. Wilson*, 2023-Ohio-4243.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

|  |  |  |
|---|---|---|
| MICHELLE WILSON, | : | CASE NO. CA2023-01-009 |
| Appellee, | : | |
| | : | O P I N I O N |
| - vs - | : | 11/27/2023 |
| | : | |
| JEFF WILSON, | : | |
| Appellant. | : | |

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
DOMESTIC RELATIONS DIVISION
Case No. DV-08-0525

Schuh and Goldberg, and Brian T. Goldberg, for appellee.

Repper-Pagan Law, Ltd., and Christopher J. Pagan, for appellant.

**M. POWELL, J.**

{¶ 1} Appellant, Jeff Wilson, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, granting a domestic violence civil protection order to appellee, Michelle Wilson.

{¶ 2} The parties were married for 28 years and have a son who reached the age

of majority some time prior to this appeal. Throughout the marriage, appellant was verbally, physically, and emotionally abusive to Wilson. She and the parties' son moved out of the marital residence in 2019. In early June 2022, Wilson informed appellant of her intention to file for divorce; she subsequently filed for divorce in August 2022. In late July 2022, appellant followed Wilson from a restaurant to her apartment building and asked her to get into his truck for a face-to-face talk. Wilson declined and appellant left. Then, on August 2, 2022, appellant returned to Wilson's apartment building. Upon being alerted of appellant's presence, Wilson retreated into the gated pool area. Appellant walked to the pool area and asked her for another chance. Despite Wilson's multiple requests that appellant leave, he remained there for 45 minutes, and then stood in the parking lot for another 30 minutes. Wilson called the police. The police arrived, advised Wilson to seek a protection order, and then left. Appellant eventually left.

{¶ 3} On August 4, 2022, Wilson petitioned the trial court for and was granted an ex parte domestic violence civil protection order ("DVCPO"). On October 19, 2022, the matter proceeded to a full hearing before a magistrate. Wilson was the only person who testified at the hearing. On October 24, 2022, the magistrate issued a decision denying Wilson's petition for a DVCPO, finding that Wilson "failed to prove by * * * a preponderance of the evidence that a final order of protection should issue in this case." Wilson filed objections to the magistrate's decision.

{¶ 4} On January 4, 2023, the trial court issued a decision sustaining Wilson's objections and granting her a four-year DVCPO. The trial court found that Wilson had suffered significant physical violence during the parties' marriage when Wilson lived in the marital home, that appellant engaged in stalking behavior upon learning of Wilson's intention to file for divorce, and that there was reasonable threat of further violence. The DVCPO included a provision restricting appellant from possessing, using, carrying, or

obtaining any deadly weapon for the duration of the order. The DVCPO also required appellant to turn over to law enforcement all deadly weapons he owned or possessed.

{¶ 5} Appellant now appeals the trial court's decision, raising three assignments of error.

{¶ 6} Assignment of Error No. 1:

{¶ 7} THE TRIAL COURT ERRED BY TAKING JUDICIAL NOTICE OF SOCIAL SCIENCE RESEARCH.

{¶ 8} In its January 4, 2023 decision granting a DVCPO to Wilson, the trial court quoted extensively from social science research papers and articles concerning spousal abuse, femicide, and delayed reporting by abuse victims. That research was not introduced as evidence during the CPO final hearing and neither party had requested the trial court to judicially notice it. Appellant argues that the trial court improperly took judicial notice of the social science research in violation of Evid.R. 201, which in turn denied him the opportunity to challenge the research and deprived him of due process.

{¶ 9} A trial court may take judicial notice of "facts of the case" at any stage of the proceeding regardless of whether either party requests it. Evid. R. 201(A), (C), and (F). "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Evid.R. 201(B). "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken." Evid. R. 201(E).

{¶ 10} Wilson argues that appellant forfeited any challenge to the judicially-noted facts because he did not request an opportunity to be heard as permitted by Evid.R. 201(E)

or file a motion for reconsideration. We are mindful of this court's opinions generally holding that when a party fails to timely request an opportunity to be heard regarding judicial notice, the party waives or forfeits any challenge to the judicially-noted facts. *State v. Leonicio*, 12th Dist. Butler No. CA2022-08-077, 2023-Ohio-2433, ¶ 11; *Fettro v. Rombach Ctr., L.L.C.*, 12th Dist. Clinton No. CA2012-07-018, 2013-Ohio-2279, ¶ 30; *State v. Howard*, 12th Dist. Warren No. CA2009-11-144, 2010-Ohio-2303, ¶ 23.

{¶ 11} However, the trial court's January 4, 2023 decision was a final appealable order. *See Weber v. Forinash*, 6th Dist. Sandusky No. S-14-034, 2015-Ohio-3187; Civ.R. 65.1. "Under Ohio law, once a trial court has entered a final judgment in a matter, a party's options for legal recourse become significantly limited." *Avon Lake Sheet Metal Co., Inc. v. Huntington Environmental Sys., Inc.*, 9th Dist. Lorain No. 03CA008393, 2004-Ohio-5957, ¶ 11. Thus, assuming the social science research referred to by the trial court was judicially noticed entitling appellant to an opportunity to be heard as to the propriety of doing so, any post-judicial-notice opportunity to be heard granted by Evid.R. 201(E) was illusory. Furthermore, appellant could not have moved the trial court for reconsideration of the judgment because "motions for reconsideration of a final judgment in the trial court are a nullity." *Pitts v. Dept. of Transportation*, 67 Ohio St.2d 378, 379 (1981).

{¶ 12} Although the trial court quoted extensively from social science research papers and articles in its decision, it never stated it took judicial notice of the social science research. Furthermore, even if the trial court erred by improperly including the social science research in its decision, the error was harmless because, as discussed below under the second assignment of error, there was sufficient credible evidence to prove by a preponderance of the evidence that Wilson was entitled to a DVCPO against appellant.

{¶ 13} Appellant's first assignment of error is overruled.

{¶ 14} Assignment of Error No. 2:

{¶ 15} THE TRIAL COURT'S GRANT OF THE DV PROTECTION ORDER WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 16} Appellant argues that the trial court's issuance of the DVCPO was against the manifest weight of the evidence. Appellant asserts that absent the social science research improperly considered by the trial court, the record lacks competent, credible evidence on all the domestic violence elements.

{¶ 17} A petition for a DVCPO is governed by R.C. 3113.31. *Crawford v. Brandon*, 12th Dist. Butler Nos. CA2013-08-150 and CA2013-08-151, 2014-Ohio-3659, ¶ 6. Pursuant to that statute, in order to obtain a DVCPO, the petitioner must prove by a preponderance of the evidence that the respondent has engaged in an act of domestic violence against petitioner or petitioner's family or household members. *McBride v. McBride*, 12th Dist. Butler No. CA2011-03-061, 2012-Ohio-2146, ¶ 12, citing *Felton v. Felton*, 79 Ohio St.3d 34, 42, 1997-Ohio-302. "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *McGrady v. Muench*, 12th Dist. Warren No. CA2018-12-145, 2019-Ohio-2677, ¶ 12.

{¶ 18} In reviewing the issuance of a protection order, the standard employed by an appellate court is contingent upon the nature of the challenge to the order. *McBride* at ¶ 10. In cases in which an appellant is challenging the scope of the protection order, the reviewing court will not overturn the trial court's decision absent an abuse of discretion. *Id.* However, a dispute regarding whether a protection order should have been granted at all will be reviewed as to whether the issuance was against the manifest weight of the evidence. *Id.* Because appellant challenges the issuance of the DVCPO under this assignment of error, we will review the issuance under the manifest weight of the evidence standard.

{¶ 19} In considering a manifest weight challenge, a reviewing court weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. *Halcomb v. Greenwood*, 12th Dist. Clermont Nos. CA2018-03-008, CA2018-03-010, CA2018-03-012, and CA2018-03-013, 2019-Ohio-194, ¶ 36. A judgment will not be reversed as being against the manifest weight of the evidence where the judgment is supported by some competent, credible evidence going to all essential elements of the case. *Id.* An appellate court is required to uphold the judgment so long as the record, as a whole, contains some evidence from which the trier of fact could have reached its ultimate factual conclusions. *Holland v. Garner*, 12th Dist. Butler No. CA2009-09-226, 2010-Ohio-2963, ¶ 8.

{¶ 20} The trial court granted Wilson a DVCPO in accordance with R.C. 3113.31(A)(1)(a)(i) and (ii). As defined by R.C. 3113.31(A)(1)(a), and as relevant here, the phrase "domestic violence" means the occurrence of one or more of the following acts against a family or household member:

> (i) Attempting to cause or recklessly causing bodily injury;
>
> (ii) Placing another person by the threat of force in fear of imminent serious physical harm or committing a violation of section 2903.211 [menacing by stalking] or 2911.211 [aggravated trespass] of the Revised Code.

{¶ 21} R.C. 3113.31 does not define the term "bodily injury." However, "for purposes of the offense of domestic violence under R.C. 2901.01(A)(3), 'physical harm' to a person means 'any injury, regardless of its gravity or duration.'" *McGrady*, 2019-Ohio-2766 at ¶ 13.

{¶ 22} Threats of violence constitute domestic violence for purposes of R.C. 3113.31 if the fear resulting from those threats is reasonable. *Halcomb*, 2019-Ohio-194 at ¶ 5. The

reasonableness of the fear should be determined with reference to the history between the petitioner and the defendant. *Id.* To grant a civil protection order, past acts alone are not enough and there must be some evidence of current domestic violence, as set forth in the statute. *Id.* Stated otherwise, while past acts may be used to establish a genuine fear of violence in the present situation, there must be an indication that the person was fearful in that present situation. *Holland*, 2010-Ohio-2963 at ¶ 9.

{¶ 23} As defined by R.C. 2903.211(A)(1), "menacing by stalking" means engaging in a "pattern of conduct" that knowingly causes another "to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person[.]" R.C. 2903.211(D)(1) defines a "pattern of conduct" as "two or more actions or incidents closely related in time[.]" In determining what constitutes a pattern of conduct, the trial court must take every action of the respondent into consideration even if some of the actions in isolation do not seem particularly threatening. *Halcomb* at ¶ 43.

{¶ 24} Pursuant to R.C. 2903.211(D)(2), "mental distress" means either: (1) any mental illness or condition that involves some temporary substantial incapacity; or (2) any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services. It is the duty of the trier of fact to determine whether a victim suffered mental distress as a result of the offender's actions. *Halcomb*, 2019-Ohio-194 at ¶ 44.

{¶ 25} During the full CPO hearing, Wilson testified regarding the verbal, physical, and mental abuse appellant subjected her to during their marriage. Wilson testified that appellant would call her "stupid," "ignorant," a "fat bitch," a "prostitute," and a "crack whore." Appellant once called Wilson a prostitute when, in early 2022, she informed him she would seek a divorce that year. Wilson detailed five separate instances between 2008 and 2019

when appellant physically abused her. Each time, Wilson sustained some degree of bodily harm. Wilson testified she never called the police after incidents of physical abuse because she was afraid something would happen to her while the police were en route. Wilson also described an incident when she was sick with a 103-degree fever and vomiting; appellant refused her requests to take her to the hospital, instead telling her she was sick because she was fat. Ultimately, Wilson's parents took her to the hospital where she was in the ICU for six days. During the marriage, appellant often threatened to take their son out of the country and away from Wilson.

{¶ 26} Appellant was controlling and would not let Wilson or their son have visitors in their home which was located in the woods on a large, isolated lot. Nor would he make or permit Wilson to arrange for necessary repairs to their home. For instance, the air conditioning was out for five years, and Wilson presented documentary evidence that the inside temperature of the home would reach 96 and 105 degrees Fahrenheit. Before Wilson received a work cellphone in June 2022, appellant would at times call her on her personal cellphone up to 28 times a day. Appellant would also fill up her voice mail with messages and text her. Even after Wilson received a work cellphone, appellant somehow obtained her work phone number and called her on that phone.

{¶ 27} Wilson testified that she tried four times to leave before she finally moved out in 2019. After she moved out, appellant told Wilson multiple times that he did not want to know where she lived because he did not want to be blamed in the event Wilson were to be killed by strangers. However, he also let her know that he knew where she lived. Wilson admitted that although the physical abuse stopped after she moved out in 2019, their relationship was "rough" as appellant was very angry at her. So, instead of filing a CPO petition, Wilson tried to mitigate appellant's reaction by first going to the marital home five times a week to feed the cat and pay bills and subsequently slowly reducing the number of

times she would go to the house each week. Thus, upon moving out, Wilson disengaged from the marriage and relationship in a slow and deliberate manner. Wilson explained it would have been more dangerous for her to just abruptly move out and file for divorce.

{¶ 28} Wilson decided to petition for a CPO in August 2022 after appellant's behavior started escalating: appellant would constantly call her night and day, then started calling their son who would then call Wilson, and finally went to Wilson's apartment building, unannounced and uninvited, twice within the span of a few days. Wilson admitted that appellant's two visits in the summer of 2022 did not involve verbal threats. Wilson explained, however, that she knows how quickly appellant can become angry and that he need not verbally threaten to be threatening. Three days after the ex parte DVCPO was served on appellant, he tried to call Wilson twice; he also let her know that a piece of paper would not stop him.

{¶ 29} Wilson testified that following the issuance of the ex parte DVCPO, appellant stopped calling her early in the morning or as soon as she is off work and stopped texting her. Wilson expressed her fear that without a DVCPO, appellant will start calling her again and come to her apartment building uninvited; appellant told her several times that he has nothing to lose.

{¶ 30} Upon thoroughly reviewing the record, we find that the trial court's decision to issue the full DVCPO was not against the manifest weight of the evidence. Wilson's uncontroverted testimony presents competent, credible evidence by a preponderance of the evidence that appellant had engaged in acts of domestic violence under R.C. 3113.31(A)(1)(a). *Felton*, 79 Ohio St.3d at 44. The Ohio Supreme Court "has expressly rejected the contention that corroborating eyewitness testimony or medical evidence must be presented to establish domestic violence by a preponderance of the evidence." *Crawford*, 2014-Ohio-3659 at ¶ 17, citing *Felton* at 44. In fact, "[o]ften the only evidence of

domestic violence is the testimony of the victim." *Id.*

{¶ 31} Nor was the issuance of the full DVCPO against the manifest weight of the evidence because Wilson waited until 2019 to move out and until August 2022 to file her petition. Wilson's testimony indicates that her marriage to appellant had been fraught with abuse — physical, verbal, and mental. After Wilson moved out, appellant's mental abuse and stalking continued, and then escalated when Wilson declared her intention to file for divorce, as evidenced by appellant's constant calls and texts and his visits to Wilson's apartment building, unannounced and uninvited, two times in short succession. While Wilson's testimony about past acts of domestic violence occurring between 2008 and 2019 was insufficient, on its own, for the trial court to grant a civil protection order, those acts were relevant to explain Wilson's state of mind and her delay in filing the petition for a DVCPO. *Porter v. Porter*, 12th Dist. Butler No. CA2019-11-185, 2020-Ohio-4504, ¶ 40.

{¶ 32} Accordingly, given the testimony and evidence presented at the hearing, we find that Wilson met her burden under R.C. 3113.31 of demonstrating by a preponderance of the evidence that she was in danger of domestic violence by appellant. The trial court's issuance of the full DVCPO in accordance with R.C. 3113.31(A)(1)(a)(i) and (ii) was not against the manifest weight of the evidence.

{¶ 33} Appellant's second assignment of error is overruled.

{¶ 34} Assignment of Error No. 3:

{¶ 35} THE TRIAL COURT ERRED BY IMPOSING A BRADY FIREARM DISQUALIFICATION.

{¶ 36} Appellant argues that the trial court's imposition of firearm restrictions prohibiting him from possessing, using, carrying, or obtaining any deadly weapons for the duration of the DVCPO and requiring him to turn over all deadly weapons to law enforcement was an abuse of discretion and unconstitutional.

{¶ 37} As used in the caption of the third assignment of error, the Brady firearm disqualification refers to a federal statute, 18 U.S.C. 922(g)(8).  Pursuant to that statute, it is unlawful for any person "who is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner" to possess any firearm or ammunition.  In support of his argument that the imposition of the firearm restrictions is unconstitutional, appellant cites *United States v. Rahimi*, 61 F.4th 443 (5th Cir.2023), which held that 18 U.S.C. 922(g)(8) is unconstitutional.  However, rulings on federal statutory or constitutional law made by a federal court other than the United States Supreme Court are not binding on this court.  *See State v. Burnett*, 93 Ohio St.3d 419, 2001-Ohio-1581; *State v. Glover*, 60 Ohio App.2d 283 (1st Dist.1978).  As of the date of this opinion, the United States Supreme Court has not addressed the constitutionality of 18 U.S.C. 922(g)(8).  There is no reason as a matter of law to vacate the firearm restrictions as unconstitutional.

{¶ 38} Following a full hearing, a trial court may issue a protection order that includes the remedies listed in R.C. 3113.31(E)(1)(a)-(g), and the court may "grant any other relief that the court considers equitable and fair."  RC 3113.31(E)(1)(h); *Felton*, 79 Ohio St.3d at 37-38.  Appellant argues the trial court abused its discretion by imposing the firearm restrictions for the duration of the DVCPO because the parties are now divorced.  Appellant does not cite any caselaw in support of his argument.  Although the General Assembly has not made it a requirement that any respondent who is subject to a DVCPO be restricted from possessing a firearm, we find no error in the trial court's decision to include the firearm restrictions in the DVCPO at issue here.  Appellant is currently subject to a CPO and the "trial court was within its discretion to incorporate the remedy provided by congress" in 18 U.S.C. 922(g)(8).  *See McGrady*, 2019-Ohio-2677; *Woolum v. Woolum*, 131 Ohio App.3d 818 (12th Dist.1999).  Furthermore, as the Ohio Supreme Court recognized, "there are strong policies reasons for allowing a court to issue a protection order after a divorce or

dissolution has become final.  Violence against a former spouse does not stop with the separation."  *Felton*, 79 Ohio St.3d at 40.

{¶ 39} Appellant's third assignment of error is overruled.

{¶ 40} Judgment affirmed.

HENDRICKSON , P.J., and PIPER, J., concur.