[Cite as *Lazor v. Souders*, 2024-Ohio-774.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| ANNA N. LAZOR, | : | CASE NO. CA2023-10-080 |
| Appellee, | : | |
| | : | O P I N I O N<br>3/4/2024 |
| - vs - | : | |
| | : | |
| STEPHEN T. SOUDERS, | : | |
| Appellant. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 23CS004455

Reminger Co., LPA, and Nathan A. Lennon, for appellee.

Stephen T. Souders, pro se.

**M. POWELL, J.**

{¶ 1}  Appellant, Stephen T. Souders, appeals a decision of the Warren County

Court of Common Pleas granting a civil stalking protection order to appellee, Anna Lazor.[1]

{¶ 2}  On or about May 18, 2023, appellant and Lazor began talking on the online

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this appeal from the accelerated calendar.

dating app "Hinge."  As their communications progressed in a positive manner, appellant asked that they move their conversation to Facebook.  In response, Lazor asked for appellant's last name so she could conduct a Google search on him.  Appellant told Lazor that his last name was Sowders.  After a Google search yielded no results, Lazor agreed to communicate with appellant on Facebook.  After interacting for a while on Facebook, appellant asked Lazor for a date.  Prior to responding, Lazor decided to investigate appellant further to make sure she was safe going on a date with him.  Consequently, Lazor posted appellant's photograph on a "private Facebook community for women."  The Facebook group was created for women to post photographs of men and for other women in the group to provide any information, including "red flags," they may have on the individual depicted.

{¶ 3}   Lazor posted appellant's photograph on May 20, 2023.  Several women in the private Facebook group reported negative interactions with appellant, and some indicated he was hostile and dangerous.  Upon receiving this information, Lazor blocked appellant on Hinge and Facebook.  Appellant then found Lazor on Instagram on May 21 or May 22, 2023, even though Lazor had never provided appellant her Instagram name or handle.  Upon finding Lazor on Instagram, appellant messaged her and called her out for blocking him on Hinge and Facebook.  Lazor did not respond to appellant's message and instead instantly blocked him on Instagram.

{¶ 4}   On June 7, 2023, Lazor received a message on Facebook from Tatiana Koblinski. It is undisputed that the Tatiana Koblinski Facebook account was a fake Facebook account appellant had created and which he used to message Lazor.  Using that Facebook account, appellant messaged Lazor, claiming that the information she had received from the private Facebook group was not true.  Appellant also used the fake Facebook account to "text yell" at Lazor for blocking him on other social media platforms.

Appellant's messages began on the morning of June 7, 2023, and continued into the early morning hours of June 8, 2023. Appellant called Lazor on Facebook at 12:30 a.m. on June 8, 2023, and last messaged her at 2:30 a.m. on June 8, 2023. Lazor did not respond to appellant's numerous messages or his call. Sometime on June 8, 2023, Lazor eventually told appellant to stop contacting her or she would call the police. On June 15, 2023, Lazor was served with a defamation lawsuit appellant had filed in Hamilton County. A few days later, Lazor received a cease-and-desist letter appellant had mailed on June 8, 2023.

{¶ 5} On June 20, 2023, Lazor petitioned the trial court for and was granted an ex parte civil stalking protection order ("CSPO"). On July 5, 2023, the matter proceeded to a full hearing before a magistrate. Both parties testified. Lazor admitted that appellant had never threatened her. She testified to the effect appellant's conduct had on her, stating she was not sleeping well, she had trouble focusing at work, she feared for her safety because appellant knew where she lives, and she was terrified of being contacted via other fake accounts, including from appellant. Lazor further testified that the incident caused her to change her behavior because she is now reluctant to respond to people reaching out to her online unsolicited.

{¶ 6} Appellant testified he never made implicit or explicit threats to Lazor and simply asked that she take down the photograph she had posted on the private Facebook group page. Appellant testified that Lazor did not tell him to stop contacting her until he messaged her on the fake Facebook account. Prior to that time, Lazor had concocted a story about her sister's cancer diagnosis, and whether Lazor had blocked him on Facebook or had deleted her Facebook account due to her sister's "illness," he reached out to her on Instagram out of concern. Appellant denied stalking Lazor and testified he did not have any intent to cause her harm or mental distress.

- 3 -

{¶ 7} On July 12, 2023, the magistrate issued a decision granting Lazor a one-year CSPO and prohibiting appellant from possessing, using, carrying, or obtaining any deadly weapon for the duration of the order. The trial court adopted the magistrate's decision that same day. On July 20, 2023, appellant filed objections to the magistrate's decision. On September 11, 2023, the trial court issued a decision overruling appellant's objections and finding no error in granting Lazor a one-year CSPO. Regarding the objections, the trial court first found that appellant improperly objected to the magistrate's decision and not to the trial court's adoption of the magistrate's decision as mandated by Civ.R. 65.1(F)(3)(d)(i) and overruled the objections on that basis. Nevertheless, the trial court also considered the merits of the objections and overruled them. The trial court found that appellant knowingly engaged in conduct constituting menacing by stalking and that Lazor suffered mental distress because of appellant's conduct.

{¶ 8} Appellant now appeals, pro se, raising seven assignments of error. For purposes of readability, several assignments of error will be addressed out of order; appellant's third and fourth assignments of error will be addressed together.

{¶ 9} At the outset, we address Lazor's claim that appellant's appeal should be dismissed because it was not filed within 30 days of the trial court's decision as required by App.R. 4. The trial court's decision was journalized on September 11, 2023; appellant filed his notice of appeal 32 days later, on October 13, 2023.

{¶ 10} App.R. 4(A)(1) provides that an appeal must be filed within 30 days of a final order. However, pursuant to App.R. 4(A)(3), "[i]n a civil case, if the clerk has not completed service of the order within the three-day period prescribed in Civ.R. 58(B), the 30-day periods referenced in App.R. 4(A)(1) and 4(A)(2) begin to run on the date when the clerk actually completes service." "Hence, it is clear that service by the clerk is the triggering event that starts the 30-day appeal period." *Clermont Cty. Transp.*

*Improvement Dist. v. Gator Milford, L.L.C.*, 141 Ohio St.3d 542, 2015-Ohio-241, ¶ 6.

{¶ 11} Civ.R. 58(B) "requires that service be made by the clerk of courts; there is no stated exception." *Id.* at ¶ 2. "[W]hen a trial court issues a judgment, *it must also issue a directive to the clerk of courts to serve all interested parties and attorneys with that judgment.* Pursuant to Civ.R. 58(B), *the clerk must then indicate on the docket the names and addresses of the parties it is serving the judgment upon, the method of service, and the costs associated with the service.*" (Emphasis added.) *Id.* at ¶ 3. "When these steps are followed, there is no question whether service was perfected according to rule." *Id.*

{¶ 12} Here, within the trial court's decision, there was no instruction to the clerk of courts to serve the entry in accordance with Civ.R. 58(B). Moreover, the docket shows only a September 11, 2023 notice mailed to the parties indicating that "a final appealable judgment was entered in the above case on September 11, 2023." Thus, neither the trial court's decision nor the September 11, 2023 notice comply with *Gator Milford.* "Civ.R. 58(B) mandates that the clerk of court's office serve the order with an accompanying notation on the appearance docket. * * * The 30-day time period to file a notice of appeal begins upon service and notation of service on the docket by the clerk of courts regardless of actual knowledge by the parties." *Id.* at ¶ 11. Because the trial court's decision does not contain a notation to the clerk to serve appellant with notice of the judgment, and the clerk did not enter an entry in the appearance docket noting the service of the entry on appellant in violation of Civ.R. 58(B) and *Gator Milford*, appellant's appeal is deemed timely under App.R. 4.

{¶ 13} Assignment of Error No. 1:

{¶ 14} THE TRIAL COURT ERRED BY GRANTING PETITIONER AN EX PARTE "EMERGENCY" CIVIL STALKING PROTECTION ORDER. FAILING TO RECOGNIZE PETITIONER'S BLATANT ABUSE OF PROCESS BOTH OBTAINING THE ORDER EX

PARTE AND SUBSEQUENT PERMANENT ORDER.

{¶ 15} Appellant challenges the issuance of the ex parte CSPO, arguing that (1) an emergency ex parte CSPO is only for emergency and a risk of violent behavior; (2) it is an abuse of process to file for an emergency ex parte CSPO when no imminent threat exists; (3) a trial court must recognize and acknowledge perjury; and (4) Lazor's petition for an ex parte CSPO was based upon inadmissible hearsay statements from women in the private Facebook group. Appellant's first assignment of error is overruled on the ground that the trial court's issuance of the full CSPO superseded the ex parte order, rendering claims based on the ex parte order moot. *See Brown v. Grauman*, 2d Dist. Champaign No. 2013 CA 14, 2013-Ohio-4814.

{¶ 16} Assignment of Error No. 7:

{¶ 17} THE TRIAL COURT ERRED BY FAILING TO ALLOW RESPONDENT SAME RIGHTS AND PRIVILEGES DURING THE CASE AS THAT OF OPPOSING COUNSEL.

{¶ 18} Appellant argues that a trial court's local rules must allow pro se litigants "the right to e-filing and case access when allowing the same to attorneys." We decline to address this argument because appellant did not raise it below. It is well established that a party may not raise new issues or legal theories for the first time on appeal; failure to raise an issue before the trial court results in waiver of that issue for appellate purposes. *Wightman v. Darty*, 12th Dist. Fayette No. CA2023-03-003, 2023-Ohio-3748, ¶ 17.

{¶ 19} Furthermore, appellant does not indicate how a lack of access to e-filing prejudiced him in this proceeding. App.R. 16(A)(7) requires an appellant's brief to contain "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant

- 6 -

relies." The burden of affirmatively demonstrating error on appeal rests with the party asserting error. *Sparks v. Sparks*, 12th Dist. Warren No. CA2010-10-096, 2011-Ohio-5746, ¶ 17. It is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Lebanon v. Ballinger*, 12th Dist. Warren No. CA2014-08-107, 2015-Ohio-3522, ¶ 27.

{¶ 20} Appellant also challenges the trial court's failure "to perfect service upon him in the final appealable decision by the court on 9-11-2023, only doing so upon his inquiry on 10-02-2023." We have accepted appellant's appeal as timely filed under *Gator Milford*, 2015-Ohio-241, and therefore find no prejudice.

{¶ 21} Appellant's seventh assignment of error is overruled.

{¶ 22} Assignment of Error No. 5:

{¶ 23} THE TRIAL COURT ERRED BY ADMITTING AND/OR DENYING EVIDENCE THAT WAS INADMISSIBLE AND/OR ADMISSIBLE.

{¶ 24} Appellant challenges the magistrate's refusal to admit Exhibit 2 at the full hearing, arguing the exhibit was admissible because it was "indeed very applicable and relevant." The record shows that appellant sought to have two exhibits admitted at the end of his case. The magistrate admitted the cease-and-desist letter but excluded the other exhibit for lack of foundation. Appellant also asserts that Lazor testified "she did not have a Facebook Group with her associates to all file CSPO in conjunction, then changed her testimony, admitting that she had a group, but they had all received independent counseling on what to do."

{¶ 25} Appellant bears the burden of affirmatively demonstrating error on appeal and substantiating his arguments in support thereof. *Ostigny v. Brubaker*, 12th Dist. Warren No. CA2023-03-026, 2024-Ohio-384, ¶ 38. As stated above, App.R. 16(A)(7) requires an appellate brief to include reasons in support of an assignment of error with

citations to authorities, statutes, and parts of the record relied upon. If a party fails to identify the error in the record upon which the assignment is based or argue an assignment as required by App.R. 16(A), an appellate court may disregard the assignment of error. App.R. 12(A)(2).

{¶ 26} Exhibit 2 is not identified in the record beyond its designation as "Exhibit 2." Appellant did not proffer Exhibit 2 into evidence at the full hearing. Pages 129 through 136 of the appendix to appellant's brief include what appears to be screenshots of responses to Lazor's posting of appellant's photograph on the private Facebook group. Appellant's brief refers to these pages of the appendix as "Exhibit 2." However, because appellant did not proffer "Exhibit 2" into evidence, it is not part of the record on appeal and appellant may not make it part of the record by attaching it to his brief. *See* App.R. 9(A); *Day v. Baker*, 12th Dist. Butler No. CA2003-06-140, 2004-Ohio-5529. Therefore, we disregard pages 129 through 136 of the appendix to appellant's brief.[2] Because Exhibit 2 is not part of our record on appeal, we cannot determine whether it was "very applicable and relevant."

{¶ 27} Appellant does not offer any analysis of the assigned error. Once again, it is not an appellate court's duty to "root out" or develop an argument that can support an assigned error, even if one exists. *Ballinger*, 2015-Ohio-3522 at ¶ 27. Nor is it the duty of an appellate court to search the record for evidence to support an appellant's argument as to alleged error. *Hellmuth v. Stephens*, 12th Dist. Butler No. CA2022-04-034, 2023-Ohio-4592, ¶ 23.

{¶ 28} Appellant's fifth assignment of error is overruled.

{¶ 29} Assignment of Error No. 6:

---

2. Indeed, without a proffer of "Exhibit 2," there is no way for this court to verify that the "Exhibit 2" included in the appendix is the same "Exhibit 2" the trial court declined to admit into evidence.

{¶ 30} THE TRIAL COURT ERRED BY FAILING TO REVIEW THE ENTIRETY OF RESPONDENT'S OBJECTIONS TO THE MAGISTRATE'S DECISION, FURTHER FAILING TO ACKNOWLEDGE RESPONDENT OBJECTED TO BOTH THE DECISION AND THE ORDER OF THE MAGISTRATE.

{¶ 31} Appellant's objections to the magistrate's decision spanned 47 pages. Three attachments were inserted in the objections on pages 5 through 8. Attachment A was the photograph of appellant that Lazor posted online and some screenshots of comments she received after the posting; attachment B was the cease-and-desist letter appellant mailed to Lazor; and attachment C was additional screenshots. Applying Loc.R. 7.10(A) regarding page limitation and noting that appellant had failed to request leave of court to exceed the 20-page limitation, the trial court declined to review appellant's objections after page 23.

{¶ 32} Appellant argues the trial court erred in refusing to review his objections in their entirety because (1) an objection to a magistrate's decision is not a motion and is therefore not subject to a page limitation; (2) the trial court cited the 20-page limitation rule, then broke that rule by considering the first 23 pages of his objections; and (3) the trial court did not address his objection to the firearm restriction provision.

{¶ 33} Loc.R. 7.10(A) governs the format of motions and filings and provides that "[o]riginal motions and memoranda in support shall be no longer than twenty (20) double-spaced pages in length, excluding attachments." Loc.R. 7.10(A)(5). "A party may request leave of Court to exceed the page limitations. Any filing which exceeds the page limitations shall contain a summary which is no greater than two double-spaced pages in length." Loc.R. 7.10(A)(6).

{¶ 34} Although an objection is technically not a motion, it is a filing. While Loc.R. 7.10 is titled "Motions," it refers to motions, memoranda/memorandum, and responses,

all filings. Even if appellant may be technically correct he should not have been limited to 20 pages, his objections were remarkably lengthy, spanning 47 pages. The first three objections, found on pages 9 through 26, included several repetitive arguments, and the sixth and seventh objections were largely redundant of earlier arguments. Page limitation "has a purpose—it assists parties with the presentation of arguments without surplusage and it assists the court in disposing of disputed matters in an economical manner." *Sheil v. Horton*, Ct. of Cl. No. 2017-00772PQ, 2018-Ohio-2355, ¶ 7. "Page limitations 'exist for good reason, to protect litigants and judicial resources alike, and [they] are neither aspirational nor advisory.' * * * '[S]trict adherence to page limits is essential to proper[] marshal[ing] of judicial resources.'" *Id.*, quoting *Beining v. Commr. of Soc. Sec.*, W.D.Pa. No. 13-305, 2014 U.S. Dist. LEXIS 42765, *1-2 (Mar. 31, 2014). Moreover, a trial court has the inherent power to manage the course of its proceedings and docket. *See Paramount Parks, Inc. v. Admiral Ins. Co.*, 12th Dist. Warren No. CA2007-05-066, 2008-Ohio-1351, ¶ 37. We therefore find no error in the trial court's decision to subject appellant's objections to the 20-page limitation.

{¶ 35} Contrary to appellant's assertion, the trial court did not break the 20-page rule when it considered the first 23 pages of appellant's objections. The trial court reached that determination by striking pages 5, 6, and 8 of the objections because these pages improperly included two exhibits–Attachments A and C– that were neither introduced nor admitted at the full hearing. We find no merit to appellant's argument.

{¶ 36} As for the trial court's failure to address appellant's objection to the firearm restriction provision, it is well settled that a motion not expressly decided by a trial court is presumed to have been overruled. *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 13. Accordingly, the objection is presumed overruled. *See Pemberton v. Woodford*, 12th Dist. Brown No. CA2012-01-001, 2013-Ohio-214, ¶ 15. As we are

addressing the merits of the firearm restriction provision under appellant's second assignment of error, we find no prejudice based on the lack of an explicit denial of appellant's objection to the firearm restriction.

{¶ 37} In its September 11, 2023 decision, the trial court initially overruled appellant's objections on the ground they improperly challenged the magistrate's decision rather than the trial court's adoption of the magistrate's decision. The court also noted that the objections did not cite to the transcript of the full hearing. Appellant takes issue with these statements, arguing that (1) the local rules only require an objecting party to file a transcript, and (2) his objections to the magistrate's decision were also properly directed to the trial court's adoption of the magistrate's decision because the trial court adopted the magistrate's decision the same day it was issued.

{¶ 38} The trial court did not overrule appellant's objections because he did not cite to the record. Rather, the trial court simply mentioned appellant's failure to cite to the full hearing transcript in conjunction with other factors–appellant's failure to argue with specificity or apply case law, his mere recitation of the magistrate's decision–in finding that he did not make cogent arguments in support of his objections.

{¶ 39} Contrary to appellant's assertion, his objections were only to the magistrate's decision, as evidenced by the caption, appellant's challenge to several of the magistrate's findings and statements, and the summary at the end of the objections. Civ.R. 65.1 governs civil protection orders. A magistrate's order granting a protection order after a full hearing is not effective unless adopted by the trial court. Civ.R. 65.1(F)(3)(c)(i). A trial court may only adopt the magistrate's grant or denial of a protection order "upon review of the order and a determination that there is no error of law or other defect evident on the face of the order." *Becker v. Harnar*, 12th Dist. Warren No. CA2019-06-044, 2020-Ohio-3234, ¶ 8, quoting Civ.R. 65.1(F)(3)(c)(ii). A party *may then* file written

objections "to a court's adoption, modification, or rejection of a magistrate's denial or granting of a protection order after a full hearing, or any terms of such an order, within fourteen days of the court's filing of the order." Civ.R. 65.1(F)(3)(d)(i).

{¶ 40} The objecting party "has the burden of showing that an error of law or other defect is evident on the face of the order, or that the credible evidence of record is insufficient to support the granting or denial of the protection order, or that the magistrate abused the magistrate's discretion in including or failing to include specific terms in the protection order." Civ.R. 65.1(F)(3)(d)(iii). "Objections based upon evidence of record shall be supported by a transcript of all the evidence submitted to the magistrate or an affidavit of that evidence if a transcript is not available." Civ.R. 65.1(F)(3)(d)(iv).

{¶ 41} Although the trial court initially overruled appellant's objections on the ground they improperly challenged the magistrate's decision rather than the trial court's adoption of the magistrate's decision, the court nevertheless proceeded to address the merits of appellant's objections. We likewise address the merits of appellant's appeal. Appellant was therefore not prejudiced and we find no merit to his arguments.

{¶ 42} Appellant's sixth assignment of error is overruled.

{¶ 43} Assignment of Error No. 3:

{¶ 44} THE TRIAL COURT ERRED BY DETERMINING RESPONDENT HAD COMMITTED THE ACTS OF MENACING BY STALKING TOWARD PETITIONER. IN DETERMINING RESPONDENT HAD THE INTENT TO CAUSE PETITIONER MENTAL DISTRESS AS DEFINED UNDER RC § 2903.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE TRIAL COURT ERRED IN DETERMINING RESPONDENT'S CONDUCT CAUSED PETITIONER MENTAL DISTRESS TO SUCH A DEGREE SHE WOULD HAVE REQUIRED MEDICAL TREATMENT.

**{¶ 47}** Appellant argues the trial court erred by granting Lazor a CSPO because the evidence presented at the full hearing does not support the trial court's findings that appellant acted knowingly to cause Lazor mental distress and that Lazor suffered mental distress. In particular, appellant asserts that all his contacts before June 7, 2023, were simply regarding dating and well-being checks on Lazor given her sister's "illness," and that all his contacts after June 7, 2023, were simply an inquiry and request to remove his photograph.[3]

**{¶ 48}** A petition for a CSPO is governed by R.C. 2903.214. It requires the petitioner to establish by a preponderance of the evidence that the respondent engaged in conduct constituting menacing by stalking. *Bartells v. Bertel*, 12th Dist. Butler No. CA2016-11-216, 2018-Ohio-21, ¶ 54. "When assessing whether a civil stalking protection order should have been issued, the reviewing court must determine whether there was sufficient credible evidence to prove by a preponderance of the evidence that the petitioner was entitled to relief." *Harnar v. Becker*, 12th Dist. Warren No. CA2020-10-068, 2021-Ohio-784, ¶ 10. "Preponderance of the evidence" means the greater weight of the evidence, or evidence that leads the trier of fact to find that the existence of the contested fact is more probable than its nonexistence. *Id.*

**{¶ 49}** Menacing by stalking is defined as "engaging in a pattern of conduct [that] knowingly cause[s] another person to believe that the offender will cause physical harm to the other person * * * or cause mental distress to the other person[.]" R.C. 2903.211(A)(1). In determining whether to grant a CSPO, the trial court must view the

---

3. Under his third assignment of error, appellant also asserts that neither sending a cease-and-desist letter nor filing a civil lawsuit as a private citizen constitutes menacing by stalking under R.C. 2903.211. In his July 12, 2023 decision, the magistrate explicitly stated that sending a cease-and-desist letter and the threat of or the commencement of a lawsuit do not constitute menacing by stalking. While the trial court briefly referred to the letter and lawsuit in its factual findings, it did not rely upon either fact in approving the issuance of the CSPO.

actions with respect to their effect on the petitioner. *Ziegler v. Tameris*, 11th Dist. Lake No. 2022-L-042, 2022-Ohio-4044, ¶ 9.

{¶ 50} A person acts knowingly "when the person is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist." R.C. 2901.22(B). To act "knowingly" is not to act "purposely," or with a specific intent to do the prohibited act. *M.D. v. M.D.*, 8th Dist. Cuyahoga Nos. 106581 and 106758, 2018-Ohio-4218, ¶ 97. "Absent an admission, '[w]hether a person acts knowingly can only be determined from all the surrounding facts and circumstances, including the doing of the act itself.'" *Id.*

{¶ 51} A pattern of conduct requires only two or more actions closely related in time. R.C. 2903.211(D)(1). In determining what constitutes a pattern of conduct, a trial court must take every action of the respondent into consideration even if some of the actions, considered in isolation, do not seem particularly threatening. *Bartells*, 2018-Ohio-21 at ¶ 56. Explicit threats are not necessary to establish menacing by stalking under R.C. 2903.211. *Id.*

{¶ 52} Mental distress means either: (1) any mental illness or condition that involves some temporary substantial incapacity; or (2) any mental illness or condition that would normally require psychiatric treatment, psychological treatment, or other mental health services, whether or not any person requested or received psychiatric treatment, psychological treatment, or other mental health services. R.C. 2903.211(D)(2).

{¶ 53} "Expert testimony is not required to establish mental distress, and a victim's testimony may be sufficient to establish mental distress." *M.J.W. v. T.S.*, 8th Dist. Cuyahoga No. 108014, 2019-Ohio-3573, ¶ 25. "The mental distress does not need to be 'incapacitating or debilitating' and a person does not need to request or receive

- 14 -

psychiatric, psychological, or mental-health treatment to establish mental distress." *Id.*

{¶ 54} Upon reviewing the record, we find that the evidence presented was sufficient to establish that appellant knowingly engaged in a pattern of conduct that would cause Lazor mental distress. During the hearing, Lazor testified that after she blocked appellant on Hinge and Facebook on May 20, 2023, and on Instagram the following day, thereby taking significant steps to ensure appellant could not contact her, he subsequently used a fake Facebook account to message her multiple times and call her once throughout June 7, 2023, through the early morning hours of June 8, 2023. Lazor testified that while the fake Facebook account ostensibly belonged to a woman, she knew the messages and Facebook call came from appellant. Lazor testified that appellant used the fake Facebook account to "text yell" and confront her about her post.

{¶ 55} While appellant testified he did not know Lazor had blocked him on Hinge prior to contacting her on Instagram, he admitted he knew he could not contact her on Facebook because he had either been blocked or Lazor had deleted her Facebook account. Appellant did not rebut Lazor's testimony that his Instagram message confronted her about blocking him. Appellant claimed that all his contacts on social media platforms were either regarding dating and well-being checks on Lazor given her sister's "illness" or to request that she remove her post from the private Facebook group. Appellant admitted he knew Lazor had blocked him on Facebook and Instagram prior to utilizing the fake Facebook account. Appellant claimed the fake Facebook account was an old account he had created for private investigation purposes.

{¶ 56} It is not unusual for a trial court to hear conflicting testimony from two different parties. *Bartells*, 2018-Ohio-21 at ¶ 63. While we acknowledge appellant's testimony explaining or denying his conduct, it was up to the trial court to determine the weight and credibility to afford Lazor's version of the events versus appellant's

version. *Id.* "A trier of fact is free to believe all, part, or none of the testimony of each witness." *In re S.C.T.*, 12th Dist. Butler No. CA2004-04-095, 2005-Ohio-2498, ¶ 24. Appellate courts typically defer to trial courts on issues of weight and credibility because, as the trier of fact, the trial court is better able to view the witnesses and observe their demeanor, gestures, and voice inflections, and then use those observations in weighing credibility." *Bartells* at *id.* Upon review of the record, we decline to substitute our judgment for that of the trial court. Appellant had knowledge he had been blocked on several social media platforms and knowingly used a fake Facebook account to contact Lazor and "text yell" and confront her about her post.

{¶ 57} We further find that the evidence presented was sufficient to establish that appellant's actions caused Lazor mental distress. Contrary to appellant's assertion, the trial court's finding that Lazor suffered mental distress was not solely based upon her testimony that she had trouble focusing at work and was not sleeping well. In addition to this testimony, Lazor also testified that she is scared for her safety as appellant knows where she lives, and is terrified of being contacted via other fake social media accounts, including from appellant. Lazor further testified to changing her behavior on how she communicates with others online as she is more apprehensive to respond.

{¶ 58} In light of the foregoing, we find that Lazor met her burden under R.C. 2903.214 of demonstrating by a preponderance of the evidence that appellant engaged in conduct constituting menacing by stalking. The trial court, therefore, did not err in issuing the CSPO.

{¶ 59} Appellant's third and fourth assignments of error are overruled.

{¶ 60} Assignment of Error No. 2:

{¶ 61} THE TRIAL COURT ERRED BY RESTRICTING RESPONDENT'S CIVIL RIGHTS WITHOUT DUE PROCESS OF LAW IN CREATING AN ORDER WHICH

DEPRIVED RESPONDENT OF HIS RIGHTS TO DUE PROCESS, TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES (FIREARM SEIZED) AND TO BE FREE FROM UNLAWFUL IMPRISONMENT/DETENTION WHEN THEY HAD NO LAWFUL OR LEGAL AUTHORITY TO DO SO UNDER OHIO LAW GIVEN RESPONDENT AND PETITIONER DO NOT HAVE A QUALIFYING RELATIONSHIP UNDER RC § 2903.

{¶ 62} Appellant argues that the trial court erred when it imposed a firearm restriction prohibiting him from possessing, using, carrying, or obtaining any deadly weapon for the duration of the CSPO because (1) there is no nexus between appellant's conduct and the firearm restriction, and (2) he does not qualify as a family or household member. Appellant cites R.C. 2903.214(E)(1) and 18 U.S.C. 922(g)(8) in support of his argument.

{¶ 63} An appellate court reviews a challenge to the scope of a CSPO under an abuse of discretion standard. *Coleman v. Razete*, 1st Dist. Hamilton No. C-180232, 2019-Ohio-2106, ¶ 30. Following a full hearing on a petition for a CSPO, R.C. 2903.214(E)(1) permits a trial court to issue a CSPO containing "terms designed to ensure the safety and protection of the person to be protected by the protection order." Restrictions placed on the respondent in the CSPO must bear a sufficient nexus to the conduct that the trial court is attempting to prevent. *Id.* at ¶ 29; *Elkins v. Reed*, 5th Dist. Stark No. 2013CA0090, 2014-Ohio-1216, ¶ 45.

{¶ 64} Pursuant to 18 U.S.C. 922(g)(8), it is unlawful for any person "who is subject to a court order that restrains such person from harassing, stalking, or threatening an intimate partner" to possess any firearm or ammunition. We recently upheld the imposition of a firearm restriction in a domestic violence civil protection order as follows:

> Although the General Assembly has not made it a
> requirement that any respondent who is subject to a DVCPO
> be restricted from possessing a firearm, we find no error in the

trial court's decision to include the firearm restrictions in the DVCPO at issue here. Appellant is currently subject to a CPO and the trial court was within its discretion to incorporate the remedy provided by congress in 18 U.S.C. 922(g)(8).

*Wilson v. Wilson*, 12th Dist. Butler No. CA2023-01-009, 2023-Ohio-4243, ¶ 38.

**{¶ 65}** We find that the trial court erred in including the firearm restriction in the CSPO against appellant. It is undisputed that the parties have never met in person and that the only personal contact between them occurred during the full hearing. Under any definition of the term, Lazor is not and never was an "intimate partner" of appellant. Therefore, 18 U.S.C. 922(g)(8) does not apply and does not support the imposition of the firearm restriction. We further find that the evidence in the record does not support the imposition of the firearm restriction under R.C. 2903.214(E)(1). No evidence was presented that appellant used or threatened to use a weapon to cause mental distress to Lazor. No evidence was presented that appellant even owned a firearm. The firearm restriction therefore does not bear a sufficient nexus to the conduct the trial court was attempting to prevent. *Wallace v. Masten*, 4th Dist. Hocking No. 02CA13, 2003-Ohio-1081, ¶ 41.

**{¶ 66}** Appellant's second assignment is sustained.

**{¶ 67}** In light of all of the foregoing, we find that the trial court did not err in issuing the CSPO against appellant. We, however, find that the trial court erred in imposing the firearm restriction for the duration of the order. We therefore affirm the trial court's decision to issue the CSPO against appellant but modify that judgment pursuant to App.R. 12(B), thereby vacating the firearm restriction prohibiting appellant from possessing, using, carrying, or obtaining any deadly weapon for the duration of the order. *Id.* at ¶ 44-45.

{¶ 68} Judgment affirmed as modified.

S. POWELL, P.J., and BYRNE, J., concur.